1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BENJAMIN D. WINIG,

        Plaintiff,

  v.

CINGULAR WIRELESS LLC,

        Defendant.

_____/

No. C-06-4297 MMC

**ORDER DENYING MOTION TO COMPEL ARBITRATION; GRANTING MOTION TO STAY OBLIGATION TO RESPOND TO COMPLAINT; VACATING HEARING**

(Docket Nos. 8, 14)

     Before the Court are two motions filed August 21, 2006 by defendant Cingular Wireless LLC ("Cingular"): (1) Cingular's motion to compel arbitration and to stay litigation pursuant to the Federal Arbitration Act ("FAA"); and (2) Cingular's motion to stay its obligation to answer or otherwise respond to the Amended Complaint pending resolution of the motion to compel arbitration. Plaintiff Benjamin D. Winig has filed separate oppositions to the motions, to which Cingular has filed separate replies. Having considered the papers filed in support of and in opposition to the motions, the Court finds the matters appropriate for resolution without oral argument, see Civil L.R. 7-1(b), VACATES the September 29, 2006 hearing, and rules as follows.

**BACKGROUND**

     The instant action is a purported class action brought against Cingular on behalf of a nationwide class consisting of all mobile telephone customers of Cingular whose service

1    agreements with Cingular "included free 'mobile-to-mobile' minutes, and who made one or

2    more calls to their own mobile telephone number after [Cingular] unilaterally changed their

3    policy to start charging customers for these calls."  (See Amended Complaint ("AC") ¶ 15.)

4        Plaintiff alleges that pursuant to his service agreement with Cingular, he pays a

5    monthly fee for, inter alia, a limited number of "anytime minutes" and unlimited free "mobile

6    to mobile" calls.  (See id. ¶ 9.)  Plaintiff alleges that when he entered into the service

7    agreement, Cingular's representatives promised him that all calls made from his mobile

8    phone to his own mobile number, primarily for purposes of checking voicemail, were

9    considered "mobile-to-mobile" calls, and were free of charge.  (See id. ¶ 3.) Until July 2005,

10   plaintiff alleges, Cingular did not charge him for calls made from his mobile phone to his

11   own mobile phone number; in July 2005, however, Cingular began charging such calls

12   against plaintiff's "anytime minutes."  (See id. ¶¶ 34-35.)

13       According to plaintiff, his service agreement provides: "If we increase the price of

14   any of the services to which you subscribe . . . we will disclose the change at least one

15   billing cycle in advance."  (See id. ¶ 4.)  Plaintiff alleges Cingular "concealed or failed to

16   adequately disclose to plaintiff the above-referenced change in the terms of his service

17   agreement.  (See id. ¶ 36.)

18       Plaintiff asserts the following causes of action against Cingular: (1) violation of the

19   Federal Communications Act, 47 U.S.C. § 201; (2) breach of contract; (3) unjust

20   enrichment; (4) breach of the covenant of good faith and fair dealing; (5) unfair competition

21   in violation of § 17200 of the California Business and Professions Code; (6) violation of the

22   Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq.; and (7) declaratory relief.

23                              **LEGAL STANDARD**

24       The FAA, 9 U.S.C. § 1 et seq., establishes a "federal policy favoring arbitration" and

25   requires federal courts to "rigorously enforce agreements to arbitrate."  See

26   Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 226 (1987) (internal

27   quotations and citations omitted).  Nevertheless, "arbitration is a matter of contract and a

28   party cannot be required to submit to arbitration any dispute which he has not agreed so to

                                          2

1   submit."  See AT&T Technologies, Inc. v. Communications Workers of America, 475 U.S.

2   643, 648 (1986) (internal quotation and citation omitted).  Whether there is an agreement to

3   arbitrate is a question for the court rather than the arbitrator, unless the arbitration

4   agreement "clearly and unmistakably" provides otherwise.  See id. at 649.

5        In determining whether there is an agreement to arbitrate, the court "should apply

6   ordinary state-law principles that govern the formation of contracts."  See First Options of

7   Chicago, Inc. v. Kaplan, 514 U.S. 938, 945 (1995).  In determining whether an arbitration

8   agreement is valid, state law is applicable "if that law arose to govern issues concerning the

9   validity, revocability, and enforceability of contracts generally."  See Doctor's Associates,

10  Inc. v. Casarotto, 517 U.S. 681, 686-87 (1996) (interpreting 9 U.S.C. § 2).    "[D]ue regard

11  must be given to the federal policy favoring arbitration," however, and "ambiguities as to the

12  scope of the arbitration clause itself resolved in favor of arbitration."  See Volt Information

13  Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. University, 489 U.S. 468, 476

14  (1989).

15       Where the court finds the parties entered into a valid agreement to arbitrate their

16  dispute, "the court shall make an order summarily directing the parties to proceed with the

17  arbitration in accordance with the terms thereof."  See 9 U.S.C. § 4.  After ordering the

18  parties to proceed to arbitration, the court "shall on application of one of the parties stay the

19  trial of the action until such arbitration has been had in accordance with the terms of the

20  agreement[.]"  See 9 U.S.C. § 3.

21                              **DISCUSSION**

22       **A.  Motion to Compel Arbitration**

23              **1.  Notification of Existence of Arbitration Clause**

24       At the outset, a dispute has arisen with respect to the manner in which plaintiff was

25  apprised of the arbitration clause at issue.  Such dispute arises in great part from conflicting

26  statements made by plaintiff as to how he obtained wireless service from Cingular.  In his

27  complaint, plaintiff alleges he purchased service "through one of [Cingular's] authorized

28  dealers," (see AC ¶ 9), while in his opposition to the motion to compel arbitration, he states

3

1  he purchased service "through Cingular's website," (see Opp. at 3:1).  Defendants have

2  submitted evidence that, in either circumstance, plaintiff would have been given a copy of

3  the terms and conditions of service, which include the arbitration clause, at the time he

4  obtained service.  (See Berinhout Supp. Decl. ¶¶ 2, 4.)  Plaintiff's declaration does not

5  address the issue of how he obtained wireless service.  Instead, plaintiff states the only

6  written material he received containing an arbitration clause was a "Welcome Kit" at the

7  "bottom of the box" in which he received his cell phone.  (See Winig Decl. ¶¶ 3-4.)

8       Because the arbitration clause in each of the above-referenced documents is

9  essentially the same, however, and because, as set forth below, such arbitration clause is

10 not enforceable, irrespective of how it was provided to plaintiff, the Court need not address

11 this issue further.

12               **2.  Unconscionability of Arbitration Clause**

13      Assuming, arguendo, the parties' contract includes an arbitration clause contained in

14 one or more of the above-referenced documents, (see Wining Decl. Ex. A at 26; Berinhout

15 Decl. Ex. B at 10-12; Berinhout Supp. Decl. Ex. B at 5), the Court must determine whether

16 any such clause is enforceable against plaintiff.  Plaintiff argues that the arbitration clauses

17 are unenforceable because their prohibition of class actions is unconscionable.[1]

18      Each of the arbitration clauses provides:

19      You and Cingular agree that YOU AND CINGULAR MAY BRING CLAIMS
        AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY,
20      and not as a plaintiff or class member in any purported class or representative
        proceeding.  Further, you agree that the arbitrator may not consolidate
21      proceedings of more than one person's claims, and may not otherwise
        preside over any form of a representative or class proceeding, and that if this
22      specific proviso is found to be unenforceable, then the entirety of this
        arbitration clause shall be null and void.
23
24 (See Wining Decl. Ex. A at 26; Berinhout Decl. at 12; Berinhout Supp. Decl. Ex. B at 5.)

24      The California Supreme Court, in Discover Bank v. Superior Court, 36 Cal. 4th 148
25

26 _____

27      [1] Each of the arbitration clauses provides that if the class action/class arbitration
   waiver is found to be unenforceable, "then the entirety of [the] arbitration clause shall be
28 null and void."  (See Winig Decl. Ex. A at 26; Berinhout Decl. Ex. B at 12; Berinhout Supp.
   Decl. Ex. B at 5.)

(2005), recently addressed the enforceability of contractual class action/class arbitration

waivers.  In Discover Bank, a credit card agreement included an arbitration clause that

precluded both the cardholder and the card issuer from participating in classwide

arbitration.  See id. at 153-54.  The plaintiff therein argued that class action or class

arbitration waivers in consumer contracts are unconscionable under California law.  See id.

at 160.  The Supreme Court first summarized the general principles of the doctrine of

unconscionability, noting the doctrine has "both a procedural and a substantive element,

the former focusing on oppression or surprise due to unequal bargaining power, the latter

on overly harsh or one-sided results."  See id. (internal quotations and citation omitted).

"The procedural element of an unconscionable contract generally takes the form of a

contract of adhesion, which, imposed and drafted by the party of superior bargaining

strength, relegates to the subscribing party only the opportunity to adhere to the contract or

reject it."  See id. (internal quotation and citation omitted).  "Substantively unconscionable

terms may take various forms, but may generally be described as unfairly one-sided."  Id.

(internal quotation and citation omitted).  Procedural and substantive unconscionability

"must both be present in order for a court to exercise its discretion to refuse to enforce a

contract or clause under the doctrine of unconscionability," although "they need not be

present in the same degree."  See Armendariz v. Foundation Health Psychcare Services,

Inc., 24 Cal. 4th 83, 114 (2000) (internal quotation and citation omitted).

In Discover Bank, the Supreme Court concluded that "at least some class action

waivers in consumer contracts are unconscionable under California law."  See Discover

Bank, 36 Cal. 4th at 160.  The Supreme Court noted that because the arbitration clause at

issue therein had been provided to the plaintiff "in the form of a 'bill stuffer' that he would be

deemed to accept if he did not close his account, an element of procedural

unconscionability [was] present."  See id.  The Supreme Court further noted that class

action waivers found in contracts of adhesion "may also be substantively unconscionable

inasmuch as they may operate effectively as exculpatory contract clauses that are contrary

1    to public policy," as expressed in California Civil Code § 1668.[2]  See id. at 161.  As

2    explained in Discover Bank, a class action/class arbitration waiver in a consumer contract

3    can act as an unlawful exculpatory clause "because damages in consumer cases are often

4    small," a company that "wrongfully extracts a dollar from each of millions of customers will

5    reap a handsome profit," and a class action "is often the only effective way to halt and

6    redress such exploitation." See id. (internal quotations and citations omitted).  Additionally,

7    such a clause is "indisputably one-sided," because companies "typically do not sue their

8    customers in class action lawsuits," and "[s]uch one-sided, exculpatory contracts in a

9    contract of adhesion, at least to the extent they operate to insulate a party from liability that

10   otherwise would be imposed under California law, are generally unconscionable." See id.

11       The Supreme Court concluded:

12       We do not hold that all class action waivers are necessarily unconscionable.
         But when the waiver is found in a consumer contract of adhesion in a setting
13       in which disputes between the contracting parties predictably involve small
         amounts of damages, and when it is alleged that the party with the superior
14       bargaining power has carried out a scheme to deliberately cheat large
         numbers of consumers out of individually small sums of money, then . . . the
15       waiver becomes in practice the exemption of the party "from responsibility for
         [its] own fraud, or willful injury to the person or property of another."  (Civ.
16       Code § 1668.)  Under these circumstances, such waivers are unconscionable
         under California law and should not be enforced.
17
     (See id. at 162-63.)[3]
18
         **a. Procedural Unconscionability**
19
20       Here, with respect to the issue of procedural unconscionability, the arbitration

21   clause, whether included in the Welcome Kit or in the Wireless Phone Service Agreement

22   on Cingular's website, is unquestionably included in a contract of adhesion because there

23   was no opportunity for plaintiff to negotiate the terms thereof.  See, e.g., id. at 160 ("The

24       [2] Section 1668 provides: "All contracts which have for their object, directly or
25   indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the
     person or property of another, or violation of law, whether willful or negligent, are against
26   the policy of the law."  See Cal. Civ. Code § 1668.

27       [3] In at least two opinions issued prior to Discover Bank, the Ninth Circuit likewise
     found the class action waivers therein at issue to be unconscionable under California law.
28   See Ingle v. Circuit City Stores, 328 F.3d 1165, 1175-76 (9th Cir. 2003); Ting v. AT&T, 319
     F.3d 1126, 1150 (9th Cir. 2003).

6

procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.")

Cingular argues that nonetheless there is no procedural unconscionability because plaintiff had the opportunity to contract with other wireless phone services that do not require their customers to agree to an arbitration clause.  California courts have reached differing conclusions on the relevance of such evidence.  Compare Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 1100 (2002) (rejecting argument that "a contract provision lacks procedural unconscionability unless the opposing party can demonstrate that no meaningful opportunity existed to obtain the offered goods or services from any other provider without the offending contract term"; holding when weaker party "is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and therefore, procedural unconscionability, are present") with Wayne v. Staples, 135 Cal. App. 4th 466, 482 (2006) (holding "[t]here can be no 'oppression' establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices").  The Ninth Circuit has followed Szetela.  See Ingle, 328 F.3d at 1172 ("We follow the reasoning in Szetela . . . in which the California Court of Appeal held that the availability of other options does not bear on whether a contract is procedurally unconscionable.").  This Court further notes that the California Supreme Court, in Discover Bank, also cited Szetela with approval and did not mention the availability of a more favorable contract from another company as a factor in determining procedural unconscionability.  See Discover Bank, 36 Cal. 4th at 160.

Accordingly, the Court finds the instant arbitration clause is procedurally unconscionable.

### b. Substantive Unconscionability

With respect to the issue of substantive unconscionability, the parties dispute whether the instant class action/class arbitration waiver differs in any material respect from

1   the type of waiver the California Supreme Court held unconscionable in <u>Discover Bank</u>.

2   Cingular argues that, unlike the type of waiver discussed in <u>Discover Bank</u>, the instant

3   arbitration clause is "exceptionally consumer friendly," (<u>see</u> Motion at 14:18), because it

4   requires Cingular to (1) pay the full cost of arbitrating any dispute that is not frivolous or

5   brought for an improper purpose and (2) pay the customer's reasonable attorneys' fees if

6   the arbitrator awards them the amount of their demand or more.  In <u>Discover Bank</u>,

7   however, the California Supreme Court expressly rejected the argument that "the potential

8   availability of attorney fees to the prevailing party in arbitration or litigation ameliorates the

9   problem posed by . . . class action waivers," finding "no indication . . . that, in the case of

10  small individual recovery, attorney fees are an adequate substitute for the class action or

11  arbitration mechanism."  <u>See Discover Bank</u>, 36 Cal. 4th at 162; <u>see</u> also <u>Laster v. T-</u>

12  <u>Mobile United States, Inc.</u>, 407 F. Supp. 2d 1181, 1191 (S.D. Cal. 2005) (following <u>Discover</u>

13  <u>Bank</u> and rejecting argument that payment of consumer's attorney fees and arbitration

14  costs precludes finding of unconscionability).

15          Accordingly, the Court finds the instant arbitration clause is substantively

16  unconscionable.

17                          **c.  Conclusion as to Unconscionability**

18          As noted, the Supreme Court in <u>Discover Bank</u> held that when a class action/class

19  arbitration waiver "is found in a consumer contract of adhesion in a setting in which

20  disputes between the contracting parties involve small amounts of damages, and when it is

21  alleged that the party with superior bargaining power has carried out a scheme to

22  deliberately cheat large numbers of consumers out of individually small sums of money,"

23  the waiver is unconscionable.  <u>See Discover Bank</u>, 36 Cal. 4th at 162-63.  Here, the Court

24  has already found the consumer contract in question to be a contract of adhesion.  Neither

25  party argues that disputes over cellular phone service do not typically involve small

26  amounts of damages.  Finally, plaintiff in the instant suit alleges Cingular unilaterally

27  changed its longstanding billing practices and began charging its customers for making

28  calls from their mobile phones to their own mobile phone numbers, (<u>see</u> AC ¶ 1-8), thus, in

8

1    essence, alleging Cingular was engaged in "a scheme to deliberately cheat large numbers

2    of consumers out of individually small sums of money," see Discover Bank, 36 Cal. 4th at

3    162-63.

4         Accordingly, the Court finds the class action/class arbitration waiver in the arbitration

5    clause to be unconscionable and, thus, unenforceable under California law.

6                              **3. Preemption**

7         Cingular argues that even if the arbitration clause is unconscionable under Discover

8    Bank, the FAA preempts "any reading of Discover [Bank] under which the class waiver in

9    Winig's arbitration provision would be deemed unconscionable."  (See Motion at 14.)

10        Section 2 of the FAA provides that an arbitration agreement "shall be valid,

11   irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

12   revocation of any contract."  See 9 U.S.C. § 2.  The United States Supreme Court and the

13   Ninth Circuit both have held expressly that invalidation of an arbitration clause under state

14   unconscionability law does not conflict with the FAA.  See Doctor's Associates, Inc. v.

15   Casarotto, 517 U.S. at 687 (holding "generally applicable contract defenses, such as . . .

16   unconscionability, may be applied to invalidate arbitration agreements without contravening

17   § 2"); Ting v. AT&T, 319 F.3d at 1150 n.15 ("Because unconscionability is a generally

18   applicable contract defense, it may be applied to invalidate an arbitration agreement

19   without contravening § 2 of the FAA.").

20        Cingular argues that its "arbitration provision can be deemed to be unconscionable

21   only under an idiosyncratic unconscionability standard that does not apply equally to all

22   contractual terms."  (See Motion at 16:11-12.)  Cingular is correct that courts may not

23   "invalidate arbitration agreements under state laws applicable only to arbitration

24   provisions."  See Doctors' Associates, 517 U.S. at 687.  Here, however, the California

25   Supreme Court has expressly held that its standard for unconscionability of class

26   action/class arbitration waivers applies equally to all contracts:

27        [T]he principle that class action waivers are, under certain circumstances,
          unconscionable as unlawfully exculpatory is a principle of California law that
28        does not specifically apply to arbitration contracts, but to contracts generally.

                                      9

1
2

> In other words, it applies equally to class action litigation waivers in contracts without arbitration agreements as it does to class arbitration waivers in contracts with such agreements.

3  See Discover Bank, 36 Cal. 4th at 165.

4          Cingular further contends that the doctrine of conflict preemption bars "a holding that

5  conditions enforcement of consumer arbitration provisions on the defendant's amenability

6  to class-wide arbitration," arguing that such a holding would "effectively kill off consumer

7  arbitration," and thus conflicts with the purpose of the FAA, "because few, if any,

8  businesses would agree to a procedure that affords none of the benefits of individualized

9  arbitration, yet multiplies the risk exponentially." (See Motion at 14:20-15:2.)  Conflict

10 preemption applies where "compliance with both federal and state regulations is a physical

11 impossibility, or where state law stands as an obstacle to the accomplishment and

12 execution of the full purposes and objectives of Congress."  See Ting, 319 F.3d at 1136

13 (internal quotations and citations omitted).  Here, however, both the United States Supreme

14 Court and the Ninth Circuit, as noted, have held the FAA permits application of state

15 unconscionability law.  See Doctor's Associates, Inc. v. Casarotto, 517 U.S. at 687; Ting v.

16 AT&T, 319 F.3d at 1150 n.15 (holding class action waiver in arbitration clause

17 unconscionable; rejecting argument that FAA preempts application of unconscionability law

18 under such circumstances).  Where, as here, "the federal law 'contemplates coexistence

19 between federal and local regulatory schemes,' conflict preemption does not come into

20 play."  See Center for Bio-Ethical Reform, Inc. v. City and County of Honolulu, 455 F.3d

21 910, 918 (9th Cir. 2006).

22          Accordingly, the Court finds the FAA does not preempt the California rule of

23 unconscionability as applied to class action/class arbitration waivers.

24          **B.  Motion to Stay Obligation to Answer or Otherwise Respond to Complaint**

25          Also before the Court is Cingular's motion to stay its obligation to answer or

26 otherwise respond to the Amended Complaint until the Court determines whether

27 arbitration is the appropriate forum.  Cingular further requests that if the Court denies the

28 motion to compel arbitration, that it afford Cingular thirty days to file a response to the

1  Amended Complaint.  Cingular's motion will be GRANTED.

2  **CONCLUSION**

3  For the reasons set forth above,

4  1.  Cingular's motion to compel arbitration is hereby DENIED.

5  2.  Cingular's motion to stay its obligation to answer or otherwise respond to the

6  complaint pending the Court's ruling on the motion to compel arbitration is hereby

7  GRANTED, and Cingular shall file a response to the Amended Complaint within 30 days of

8  the date of this order.

9  This order terminates Docket Nos. 8 and 14.

10  **IT IS SO ORDERED.**

11  Dated: September 27, 2006                    MAXINE M. CHESNEY
United States District Judge

11